**GENERAL ELECTRIC CAPITOL CORPORATION, Plaintiff,**

v.

**DEERE CREDIT SERVICES, INC., Defendant.**

**No. C–1–91–239.**

United States District Court, S.D. Ohio, W.D.

Sept. 11, 1992.

Patrick Daniel Lane, Dinsmore & Shohl, Cincinnati, Ohio, for plaintiff.

Joseph Charles Winner, McFadden, Winner & Savage, Columbus, Ohio, for defendant.

## ORDER GRANTING JUDGMENT IN FAVOR OF PLAINTIFF

SPIEGEL, District Judge.

This matter came before the Court on the Defendant's Initial Brief (doc. 11), the Plaintiff's Brief on the Merits (doc. 12), the Defendant's Reply Brief (doc. 13), and the Plaintiff's Reply Brief on the Merits (doc. 14). By Order of the Court dated June 3, 1992, a pretrial conference and trial were vacated (doc. 10), so that this matter could be determined on the above mentioned briefs submitted by counsel for the parties.

The question presented in this case is whether the Plaintiff's perfected security interest in the proceeds of the Jensen inventory and the Huff, Manning and Rockel Chattel Paper ("HMR Chattel Paper") has priority over the Defendant's interests in the proceeds of that same collateral. The Court concludes that the Plaintiff's perfected security interest has priority over the Defendant's unsecured claims under the Uniform Commercial Code ("UCC") as adopted in the State of Ohio.

## BACKGROUND

Jensen R.V. Center ("Jensen") was a corporation engaged in the business of selling, leasing, renting and repairing recreational vehicles ("RV's"). General Electric Capitol Corporation ("GECC" or "Plaintiff") provided floor-plan financing for Jensen from early 1987 through mid–1988 when Jensen filed for bankruptcy protection. Under the GECC–Jensen floor-plan agreement, GECC agreed to finance Jensen's inventory purchases. Jensen, in turn, granted to GECC a security interest in Jensen's assets, including its inventory, chattel paper, proceeds, cash, accounts receivable, contract rights, and general intangibles. This security interest was properly perfected in early July 1987.

Deere Credit Services Incorporated ("Deere" or "Defendant") provided retail financing to many of Jensen's customers

pursuant to an agreement between Deere and Jensen. Under the agreement Jensen could elect to send consumer installment contracts to Deere. If Deere accepted an installment contract submitted by Jensen, Jensen was entitled to be credited by Deere. With respect to approximately fifteen installment contracts Jensen submitted to Deere, Jensen breached various terms of its agreement with Deere. As a result of these breaches, Deere commenced a civil action in the Court of Common Pleas, Butler County, Ohio, to recover damages.

Between March 29, 1988 and April 16, 1988, Jensen sold three RV's from its inventory which are relevant to this suit. The Purchasers were the Huffs, the Mannings and the Rockels. With regard to each sale, GECC held a perfected purchase money security interest in the RV as inventory, under the floor-plan agreement with Jensen. As part of each sale, however, each consumer executed an installment contract in favor of Deere. The installment contracts generated as a result of these sales will be referred to collectively as the "HMR Chattel Paper." Of the total amount credited by Deere to Jensen for Deere's acceptance of the HMR Chattel Paper, $57,424.78, was attributable to the unpaid balance of the cash price for the three RV's as part of Jensen's inventory.

Deere did not remit to Jensen the proceeds of the HMR Chattel Paper. Rather, Deere retained the proceeds and set them off against the money Jensen owed Deere as a result of Jensen's contract violations which became the subject of the Butler County Common Pleas Court suit. Jensen filed for Bankruptcy in August 1988, in the United States Bankruptcy Court for the Southern District of Ohio.

The Plaintiff in this action seeks to recover the proceeds produced by the sale of the three RV's totalling $57,424.78, plus interest. The Plaintiff maintains that the Defendant, by setting off the proceeds of the HMR Chattel Paper, wrongfully converted funds on which the Plaintiff held a valid, perfected purchase money security interest.

The Defendant claims that this matter is governed by Ohio Revised Code § 1309.37 (UCC 9–318). The Defendant asserts that under UCC 9–318 its right to set off the funds against the money Jensen owes it, is not subordinate to the Plaintiff's perfected security interest. The Defendant further contends, that since Defendant clearly owes Jensen nothing, it owes Jensen's assignees nothing. Since Plaintiff, according to the defendant, is nothing more than a mere assignee of Jensen, the Defendant consequently owes the Plaintiff nothing.

## DISCUSSION

### 1) § 1309.37 (UCC 9–318) DOES NOT GOVERN THE OUTCOME OF THIS CASE

The Defendant's entire argument that it is entitled to the proceeds of the HMR Chattel Paper rests on the assertion that UCC 9–318 governs the outcome of this matter. As the following discussion makes clear, however, UCC 9–318 is inapplicable to the instant case. This case is, rather, governed by the clear priority guidelines of Ohio Revised Code § 1309.12 (UCC 9–201). Section 1309.37 (UCC 9–318) states in pertinent part:

(A) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section 1309.17 of the Revised Code, the rights of an assignee are subject to:

(1) all terms of the contract between the account debtor against the assignor and any defense or claim arising therefrom; and

(2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

In order to draw this case within the ambit of UCC 9–318, the Defendant attempts to portray the Plaintiff as an "assignee" of Jensen's accounts receivables and contract rights. Similarly, the Defendant attempts to define itself as an "account debtor" for purposes of UCC 9–318.

## a) THE PLAINTIFF IS NOT AN ASSIGNEE UNDER UCC 9–318

■ For several reasons, UCC 9–318 is wholly inapplicable to the case at bar. First, the Plaintiff is not an "assignee" within the meaning of UCC 9–318. In support of its claim that the Plaintiff is an assignee, the Defendant relies on *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185 (7th Cir.1990). The *Waunakee* court held, *inter alia,* that a security interest in *accounts receivable* is an assignment within the meaning of § 9–318. The Defendant reasons that because the Plaintiff claims a security interest in Jensen's *accounts receivable,* under *Waunakee* and the cases cited therein, the Plaintiff is an assignee for purposes of UCC 9–318. Contrary to the Defendant's characterization of the Plaintiff's interests, however, the Plaintiff's perfected security interest at issue here is *not* one involving accounts receivable. The Plaintiff is therefore not an assignee.

The security interest in question here involves the Plaintiff's perfected security interest in the identifiable proceeds of Jensen's inventory (the three RV's) under Ohio Revised Code § 1309.29 (UCC 9–306), in the chattel paper generated from those sales, and in the proceeds of that chattel paper.

■ The HMR Chattel Paper is clearly "chattel paper" and not accounts receivable, contract rights or general intangibles for purposes of the UCC. *See Pacific Finance Loans v. Goodwin,* 41 Ohio App.2d 141, 70 O.O.2d 265, 324 N.E.2d 578 (1974) (holding that a retail installment contract is chattel paper under the UCC). "Chattel paper" is a writing which evidences both a monetary obligation and a security interest in goods. Ohio Rev.Code § 1309.01(A)(2) (UCC 9–105(1)(b)). The consumer security agreements created by the Huff, Manning and Rockel RV sales are, in fact, "[t]he most common source of 'chattel paper'" within the meaning of Article Nine. *See,*

*e.g.,* James J. White & Robert S. Summers, Uniform Commercial Code § 21–9, at 956 (3d. ed. 1988).

■ Furthermore, the HMR Chattel Paper cannot be classified as *both* chattel paper *and* accounts receivables. The UCC specifically defines "account" as "any right to payment for goods ... or services which is *not* evidenced by chattel paper...." § 1309.01(A)(15) (UCC 9–106) (emphasis added). It is true that the broadly worded GECC–Jensen floor plan includes accounts receivable; but simply because the floor plan *includes* accounts receivable, it does not necessarily follow that all paperwork generated by the parties which evidences a duty to pay, *is* an "account receivable" under the UCC. For example, the floor plan also includes as collateral Jensen's contract rights, cash, and general intangibles, but those forms of collateral are likewise, not at issue here.

■ Because the Plaintiff's security interest pertinent to this action involves proceeds of the sale of inventory, chattel paper and the proceeds of that chattel paper, and not accounts receivable, the Defendant is not protected by the provisions of UCC 9–318.[1]

## b) THE DEFENDANT IS NOT AN ACCOUNT DEBTOR UNDER THE UCC

■ Second, the Defendant is not an "account debtor" for purposes of 9–318 as it claims to be. An account debtor is one who is obligated on an account, chattel paper or general intangible. Ohio Rev. Code § 1309.01(A)(1) (UCC 9–105(1)(a)). As discussed above, the collateral at issue here is chattel paper. The Defendant apparently has misconstrued the meaning of "obligated on ... chattel paper." Those "obligated on" the chattel paper in question here, and thus the "account debtors" in connection with this case, are the consumers, Huff, Manning and Rockel, whose purchases of the RV's, generated the chattel

---

**1.** We do not suggest in any way that an interest in chattel paper cannot be assigned. *See generally* 69 Am.Jur.2d *Secured Transactions* § 444. We simply hold that the mere existence of a security interest in chattel paper does not, in

and of itself, create an "assignment" under UCC 9–318 as it may with regard to accounts receivable. *See, e.g., Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185 (7th Cir.1990).

paper. *See* § 1309.01(A)(1) official comment 4; 68 Am.Jur.2d. *Secured Transactions* § 41 (1977).

Furthermore, we are aware of no case which likens someone who acquires chattel paper, to an account debtor for purposes of the UCC. Where the UCC has addressed the purchase of chattel paper, however, it expressly considers the purchaser a secured party. *See* Ohio Rev.Code § 1309.27 (UCC 9–308). UCC 9–308 gives priority to a purchaser of chattel paper who gives "new value" and takes possession of the chattel paper in the ordinary course of business. This section is inapplicable to the instant case for the simple reason that the Defendant did not give "new value" as consideration for the HMR Chattel Paper. *See In re Dr. Huff Co., Inc.*, 44 B.R. 129, 132 (Bankr.W.D.Ky.1984) (a setoff of funds against a preexisting debt does not constitute "new value" for purposes of UCC 9–308).

As neither UCC 9–318, nor UCC 9–308 apply to this case, we are left with the Plaintiff's perfected security interest in the proceeds of the Jensen inventory, the HMR Chattel Paper, and the proceeds therefrom, on the one hand, and the Defendant's unsecured claims against Jensen, stemming from wholly unrelated breaches of their agreement, on the other.

### 2) PLAINTIFF'S RIGHTS ARE SUPERIOR UNDER § 1309.12 (UCC 9–201)

■ Section 1309.12 of the Ohio Revised Code (UCC 9–201) provides the basic rights of the secured creditor over the unsecured creditor. That section states in relevant part:

Except as otherwise provided ... a security agreement is effective according to its terms between the parties, against

purchasers of the collateral and against creditors.

The UCC further provides:

Except where sections 1309.01 to 1309.50 of the Revised Code otherwise provide, a security interest continues in collateral [the Jensen inventory and the HMR Chattel Paper] notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

Ohio Rev.Code 1309.25 (UCC 9–306). The parties do not dispute that the Plaintiff has had a perfected security interest in Jensen's inventory, chattel paper and the proceeds therefrom since early 1987. The UCC describes proceeds as *"whatever* is received upon the sale, exchange, collection, or other disposition of *collateral* or *proceeds"* Ohio Rev.Code § 1309.25(A) (UCC 9–306) (emphasis added). The HMR Chattel Paper generated by the sale of the inventory (the RV's Jensen sold to Huff, Manning and Rockel), therefore, were identifiable proceeds of that sale. Ohio Rev. Code § 1309.25(A) (UCC 9–306). The Plaintiff's security interest in the proceeds remained perfected under § 1309.25(C) (UCC 9–306(3)). Because, as discussed above, Jensen could not seek refuge in UCC 9–318, 9–308 or 9–104(i),[2] the Defendant has nothing more than an unsecured right to sue Jensen on the alleged breaches of their agreement.

Finally, it is not even remotely argued that the Defendant has a *perfected* security interest in the HMR Chattel Paper. Thus, even if it could be somehow construed that the Defendant was a *secured* creditor, its interest would still be subordinate to the perfected security interest the Plaintiff has had since early 1987. *See* Ohio Rev.Code § 1309.31 (UCC 9–312).

---

**2.** By the Defendant's own admission, this is *not* a case involving a bank's right of setoff. *See generally* Defendant's Reply Brief, Doc. 13, at 1–8. Thus, the question of priorities and the scope of the Ohio Revised Code § 1309.04(H) (UCC 9–104(i)) exclusion of setoffs is of no concern to the Court in the instant matter. The ultimate

outcome of this case, however, would be the same had this case involved a bank's right of setoff. *See MNC Commercial Corp. v. Joseph T. Ryerson & Son*, 882 F.2d 615 (2d Cir.1989); *Griffen v. Continental Am. Life Ins. Co.*, 722 F.2d 671 (11th Cir.1984); *In re Gibson Group, Inc.*, 126 B.R. 759 (S.D.Ohio 1991).

## CONCLUSION

By virtue of Jensen's breaches of its agreement with the Defendant, which are wholly unrelated to the HMR Chattel Paper and proceeds at issue here, the Defendant is an unsecured creditor of Jensen. The Plaintiff, on the other hand, has held a perfected security interest in the proceeds of the Jensen inventory and the HMR Chattel Paper under Article Nine of the UCC as applicable under the Ohio Revised Code, since early 1987. Under the UCC, the rights of a secured party are superior to the rights of an unsecured creditor, with certain exceptions not relevant here. Accordingly, the Plaintiff is entitled to the return of the proceeds of the HMR Chattel Paper in the amount of $57,424.78, plus accrued interest from the date of the Defendant's setoff.

SO ORDERED.